OPINION OF THE COURT
Ellen Gesmer, J.
This motion raises the question of whether the court may use its contempt powers to enforce the automatic orders set forth in Domestic Relations Law § 236 (B) (2) (b) and 22 NYCRR 202.16-a. The court holds, contrary to the one reported case on point, Buoniello v Buoniello (NYLJ, May 7, 2010, at 28, col 3 [Sup Ct, Suffolk County]), that it may do so. Nonetheless, I am denying the motion because the movant, defendant husband, has not proved that plaintiff wife in fact violated the orders.
Facts
The parties, both in their late 40s, were married on November 25, 2002. They have no children. They separated in early 2009. The wife commenced this divorce action on October 13, 2010 by filing a summons with notice, along with a “Notice of Automatic Orders,” which sets out the statutory automatic orders verbatim, refers to the section of the Domestic Relations Law establishing the automatic orders, and notifies the recipient that the orders are effective as to the plaintiff (the wife in this case) upon her filing of the summons, and that they are effective as to the defendant (the husband) upon service of the summons and the notice of automatic orders upon him. The summons with notice and the notice of automatic orders were subsequently served on the husband.
The parties jointly own a vacation home in Vermont (the Vermont house). They have a joint bank account with HSBC (the joint account), which they used during the marriage to pay joint expenses. After they separated, they continued to deposit rental income from the Vermont house into the joint account and to pay expenses for the Vermont house from it.
On or about December 15, 2010, the rental broker for the Vermont house deposited rental income of $6,000 into the joint account. On the same day, the wife transferred these funds into *375 a bank account in her sole name. On or before January 4, 2011, she transferred those funds back to the joint account.
The husband claims in his affidavit in support of his motion that, since May 2009, he has only used funds in the joint account for Vermont house expenses. However, the wife points out, and the husband does not deny, that in June 2009 he spent approximately $500 from the joint account at the Borgata Casino Hotel in Atlantic City, New Jersey, and transferred an additional $10,000 from the joint account to an account in his sole name. From May 2009 until her withdrawal of $6,000 in December 2010, the wife made one deposit into the joint account of $5,000, and did not make any withdrawals. The wife claims that she transferred the $6,000 out of the joint account on December 15, 2010 because she feared that the husband would not spend the funds on the Vermont house expenses and would dissipate them. She claims that she moved them into her separate account in order to preserve them.
The husband’s instant motion was served on the wife’s attorney, but not on the wife personally. In his motion, the husband seeks an order holding the wife in contempt for her removal of the funds from the joint account, and an award of attorneys’ fees.
Analysis
A person is guilty of civil contempt when he neglects or violates a duty imposed by a lawful mandate of the court, which neglect or violation has the effect of defeating, impairing, impeding or prejudicing the right of another (Judiciary Law § 753 [A]). Civil contempt is punishable by a fine in an amount sufficient to indemnify the aggrieved party for an actual loss, including counsel fees, and/or by imprisonment until the fine is paid for up to six months (Judiciary Law §§ 773, 774). In order to adjudicate a party in civil contempt, a court must find that there was a clear and unequivocal mandate of which the party had knowledge, that the party violated the mandate, and that the party’s failure to comply with it prejudiced the rights of the other party (Matter of McCormick v Axelrod, 59 NY2d 574 [1983]).
The wife argues that the husband’s contempt motion must be denied for three reasons. As an initial matter, she cites to Buoniello v Buoniello (NYLJ, May 7, 2010, at 28, col 3), in which the court found that “the directive in the Summons does not constitute a clear and unequivocal order” and that the automatic *376 orders set forth in Domestic Relations Law § 236 (B) (2) (b) “are statutory mandates and do not constitute orders issued by a Court.” Based on that reasoning, the court held that contempt was not an appropriate remedy for Mr. Buoniello’s withdrawal of $180,000 of retirement funds in his name the day after he had been served with the divorce summons.
Buoniello is the only reported decision dealing with the automatic orders cited by the parties or located by this court. However, it is not binding on this court, and this court declines to follow it for two reasons. First, the Buoniello decision does not describe the form of the notice of the automatic orders served upon Mr. Buoniello. It may well be that the court in that case perceived that he had not been given adequate notice of the existence and enforceability of the automatic orders. In contrast, in this case, it is the wife who served the notice of the automatic orders, and she cannot be heard to complain that she herself was not on adequate notice. In any event, the notice she served was complete and tracked the statutory language.
Secondly, while the court in Buoniello correctly pointed out that the Domestic Relations Law section dealing with automatic orders is not a “lawful mandate of the court,” the court rule (22 NYCRR 202.16-a [1] [b]), which requires service of a copy of the “automatic orders” on defendant, and contains language identical to that found in Domestic Relations Law § 236 (B) (2) (b), certainly is. The court rules are promulgated by the Chief Administrator of the Courts on behalf of the Chief Judge of the Court of Appeals under the authority vested in them by Judiciary Law § 211 (1) (b) and § 212 (2) (b), and by article VI, § 30 of the New York State Constitution, to adopt rules to regulate practice and procedure in the courts. Thus, the court rules constitute lawful mandates of the court. Furthermore, the legislative history of Domestic Relations Law § 236 (B) (2) (b) makes clear that the Legislature intended that a violation of the automatic orders would be redressed by the same remedies available for violations of any order signed by a judge. The New York State Assembly Memorandum in Support of the legislation states that the statute was intended:
“to place upon the plaintiff a duty to serve upon the defendant automatic orders which would bind both parties from the commencement of a matrimonial action. The automatic orders would be binding upon the plaintiff upon the commencement of the action and upon the defendant upon service of the Sum *377 mens or Summons and Complaint. The specific matters covered by the proposed automatic orders include prohibitions against the following: transfers and encumbrances of real and personal property and retirement funds; the accumulation of unreasonable debt; and changes in beneficiaries on existing health and life insurance policies.” (Mem in Support of 2009 NY Assembly Bill A2574, Bill Jacket, L 2009, ch 72).
Both the Assembly and Senate memoranda in support of the legislation state:
“JUSTIFICATION: The adoption of automatic orders at the very commencement of a matrimonial action is intended to prevent both parties from dissipating assets, incurring unreasonable debts, or removing a party or the children from health or life insurance policies. Making these prohibitions automatic upon commencement of the action will also save on legal fees and judicial time. The bill has the support of the OCA Committee on Matrimonial Practice, chaired by Hon. Jacqueline Silbermann, Statewide Administrative Judge for Matrimonial Matters.” (Id.; Introducer’s Mem in Support, 2009 NY Senate Bill S2970.)
The Chief Administrative Judge effectuated these legislative goals by promulgating and publishing the court rule. Accordingly, this court finds that civil contempt is available as a remedy for violation of the automatic orders, provided that the plaintiff has served the defendant with adequate notice of the automatic orders, as has been done in this case.
The wife argues, however, that the husband has not shown that she has violated the orders, or met the other requirements for imposition of contempt. In relevant part, the first paragraph of the automatic orders states:
“neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or by order of the court, any property . . . individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorney’s fees in connection with this action . . . .” (Emphasis added.)
It is undisputed that the wife did not spend any of the withdrawn funds, and the husband has not shown that she *378 intended to or did spend them for any purpose prohibited by the automatic orders. The automatic orders specifically permit the expenditure of assets during matrimonial litigation in the ordinary course of business and on “household” expenses. The wife claims that she moved the funds to preserve them and to prevent the husband from dissipating them, and she replaced them without spending any of them. Therefore, the husband has not shown that she violated the automatic orders. In addition, the husband fails to show that his rights were “defeated, impaired, impeded, or prejudiced” (Judiciary Law § 753 [A]) by the brief removal from the joint account of the funds which were withdrawn, and promptly replaced, by the wife. Consequently, the husband has failed to make out his claim for contempt.
Finally, the wife argues that the husband’s contempt motion must be denied because it was never personally served upon her, as required by Judiciary Law § 761. The court agrees.
Since the court does not find that the wife is in contempt, there is no basis for the husband’s request for counsel fees pursuant to Judiciary Law § 773.
In accordance with this decision, it is hereby ordered that the husband’s motion is denied in its entirety.